IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Joseph Hatcher,<br>    Plaintiff, | )<br>)<br>) |
| v. | )      1:22cv47 (CMH/IDD)<br>) |
| Harold Clarke, et al.,<br>    Defendants. | )<br>) |

ORDER

This matter was recently transferred from the United States District Court for the Western District of Virginia and is now before this Court upon two motions to dismiss, one filed by each of the two defendants named in this civil action. In his complaint, plaintiff Joseph Hatcher ("plaintiff" or "Hatcher"), who is a Virginia state prisoner, alleges that defendants Harold Clarke ("Clarke") and Dr. William York ("Dr. York") (collectively "defendants") violated his rights by providing him constitutionally inadequate medical attention. [Dkt. No. 1]. Although plaintiff was provided the notice required under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), see [Dkt. No. 11], he has not filed any response to defendants' motions. Neither this Court's docket nor the associated docket in the Western District contain any indication—such as a piece of returned mail—that plaintiff did not receive the Roseboro warning just discussed. What's more, a search of the "Virginia Inmate Locator" indicates that plaintiff remains incarcerated at Bland Correctional Center, the facility from which he filed his complaint. Consequently, the Court can only assume that plaintiff received notice of defendants' motions but has simply declined to oppose them. Accordingly, the Court will not delay its consideration of the motions. For the reasons that follow, Clarke's motion will be granted, and Dr. York's will be denied.

I. The Complaint

Because the complaint was originally filed in the Western District, this Court did not conduct the screening required by 28 U.S.C. § 1915A. Had this Court had that responsibility, it

would have required plaintiff to amend the complaint based on his failure to abide by Rules 8 and 10 of the Federal Rules of Civil Procedure. The first of these rules requires litigants to provide "(1) a short and plain statement of the grounds for the court's jurisdiction ...; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Rule 10, meanwhile, requires parties to "state [their] claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

In its current form, plaintiff's complaint does not accomplish these ends. Instead, it consists of a standardized § 1983 complaint form and approximately 150 pages of exhibits consisting of a host of medical records, affidavits, and screenshots of what appear to be text messages. See [Dkt. No. 1]. Despite an instruction on the complaint form instructing plaintiff to answer questions including, "What happened to you? Who did what? Was anyone else involved?", plaintiff offered scant factual allegations on the standardized form and instead suggested that the Court refer to "all emergency grievances enclosed." Id. at 6.

Despite plaintiff's failure to abide by the Federal Rules, the Court has reviewed the complaint and the exhibits accompanying it to the best of its ability. An affidavit located within the exhibits offers a brief factual narrative which, in combination with information gleaned from other exhibits, contributed to the statement of facts that follows.

Plaintiff alleges that he arrived at Nottoway Correctional Center on or around October 23, 2020. [Dkt. No. 1-1] at 93. He was quarantined for fourteen days, after which he was moved to the "lower B west" pod. Id. Plaintiff shared his cell with one inmate for approximately a month, until roughly December 1, 2020, when he received a new cellmate named Cameron Conner. Id. Conner informed plaintiff that he had come from a "red zone" and had recently spent time in a cell with an inmate who had tested positive for COVID-19. Id. Several days later, plaintiff

"started becoming very ill," developing a dry cough, fever, loss of taste and smell, and soreness. Id. Plaintiff requested to be tested for COVID-19, but nurses at the facility allegedly denied these requests. Id.

Plaintiff's COVID-19 symptoms dissipated after approximately nine days, but he then began to feel extreme weakness and severe abdominal pain. Id. Plaintiff filed emergency grievances seeking treatment for these symptoms but was informed that his situation was "not an emergency." Id. A doctor allegedly stated that he thought plaintiff was "bullshitting" regarding his symptoms. Id. Eventually, plaintiff claims, officials in his prison "had had enough" of plaintiff's complaining and "demanded that [medical officials] do something about [him]." Id. At this point, plaintiff's "skin was very yellow, and [he] was so weak [he] could barely walk." Id. Plaintiff was then taken to "VCU hospital in Richmond," where doctors discovered plaintiff's "liver was failing." Id. Plaintiff "spent seven days in VCU hooked to an IV drip, receiving medication to get [his] liver enzymes back to normal range." Id.

The records attached to the complaint show that Dr. York saw plaintiff—or was at least consulted regarding plaintiff's health—on several occasions. First, a record dated October 22, 2020, indicates that Dr. York ordered plaintiff undergo lab work upon his arrival at Nottoway Correctional Center. [Dkt. No. 1-1] at 143. Next, a sick call form dated November 23, 2020—but not signed by Dr. York until January 8, 2021—shows that plaintiff had requested a multivitamin, apparently to combat "degenerative disc disease." Id. at 130. Another sick call form—this one dated January 9, 2021 and signed by Dr. York on January 11, 2021—states that plaintiff was complaining of stomach pain and constipation and notes that plaintiff had "possible ketones & blood in urine" as well as raised "leukocytes." Id. at 128. Although it is not entirely clear from the record, it appears plaintiff was provided magnesium citrate in response to those concerns. Id. A record dated January 13, 2021 appears to corroborate that plaintiff was provided magnesium citrate. Id. at 126. The record indicates plaintiff was also provided miralax. Id.

3

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A complaint must therefore allege specific facts in support of each element of each claim a plaintiff raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Iqbal, 566 U.S. at 678.

## III. Analysis

It is clear from the complaint that plaintiff believes he received constitutionally defective medical attention while incarcerated at Nottoway Correctional Center. To state a claim under such a theory, a complaint must allege (1) that the plaintiff has a serious medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and (2) that the defendant-medical professional "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks and citation omitted).

4

A.  *Clarke's Motion to Dismiss*

In his motion to dismiss, Clarke argues that the complaint (1) fails to adequately allege his personal involvement in any violation; (2) fails to state any viable Eighth Amendment claim against him; and (3) fails to state a claim against him in his official capacity. [Dkt. No. 10].

The Court agrees with each of these arguments. First, Clarke's name does not appear anywhere in the complaint except in its caption, where Clarke is merely named as a defendant. This is an insufficient basis to establish liability, for "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given to pro se complaints." Prosha v. Robinson, No. 3:16cv163, 2018 WL 564855, at *8-9 (E.D. Va. Jan. 25, 2018) (citing Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (citation omitted). This is so because, in a § 1983 action, a plaintiff bears the burden to prove direct personal involvement by each defendant. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (observing that liability in a civil rights action is "personal, based upon each defendant's own constitutional violations").

Due to the dearth of factual allegations, it is clear that the complaint fails to state a deliberate indifference claim against Clarke. To have succeeded in stating a claim against Clarke, who as the Director of the Virginia Department of Corrections is a non-medical professional, the complaint would have had to allege "that [Clarke] was personally involved in the treatment or denial of treatment, or that [he] deliberately interfered with the treatment, or that [he] tacitly authorized or [was] indifferent to the medical provider's misconduct." Ballenger v. Crawford, No. 3:15cv12558, 2016 WL 8710023, at *9 (S.D.W. Va. Aug. 5, 2016) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)). Here, the complaint does not offer any factual allegations to support the notion that Clarke had any knowledge of plaintiff's health status, let

5

alone that Clarke acted in a manner that would actively undermine plaintiff's ability to seek and obtain medical attention.

Even to the extent plaintiff seeks to hold Clarke liable not directly, but instead in his supervisory capacity, the complaint fails to state a viable claim. To state a supervisory liability claim, a complaint must allege facts that demonstrate (1) that the supervisor knew his or her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). In failing to allege any acts or knowledge of plaintiff's health status by Clarke, the complaint fails to satisfy this standard.

Finally, plaintiff is unable to recover damages from Clarke in his official capacity, which is the only capacity in which Clarke has been sued in this action, see [Dkt. No. 1] at 2. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). For these reasons, Clarke's motion to dismiss will be granted.

B.  *Dr. York's Motion to Dismiss*

Like Clarke, Dr. York makes several arguments for dismissal of the claim against him. He asserts: (1) that the complaint fails to establish that plaintiff exhausted administrative remedies; (2) that he is entitled to qualified immunity; and (3) that the complaint fails to state a viable deliberate indifference claim against him. [Dkt. No. 7].

The Court concludes that dismissal on the basis of exhaustion is not currently warranted. In his motion, Dr. York correctly observes that sua sponte dismissal of a complaint may be appropriate when a complaint affirmatively demonstrates the failure to exhaust administrative

6

remedies. See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017) ("Moore narrowly addresses—and correctly upholds—courts' ability to dismiss complaints for failure to exhaust administrative remedies when the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense."). But here, the Court is not convinced that failure to exhaust is apparent from the face of the complaint. Although exhaustion is undeniably mandatory, a prisoner bears the burden only to exhaust all *available* administrative remedies, see 42 U.S.C. § 1997e(a), and the complaint's allegations suggest that plaintiff believes some remedies were not available to him. See [Dkt. No. 1] at 7 (stating "none/nothing" happened after plaintiff filed grievances, potentially meaning that some of plaintiff's grievances were either unanswered or not returned).

Dr. York contests such a finding, stating that plaintiff's "exhibits show that no grievance was ignored" because in response to those documents plaintiff was "either evaluated by nursing, referred to a physician, or transferred to VCU." [Dkt. No. 7] at 8. It may be true that plaintiff received medical attention in response to his complaints, but the extent of the medical attention plaintiff received does not speak to the extent to which plaintiff satisfied or failed to satisfy the Virginia Department of Corrections's grievance process. Accordingly, although his exhaustion argument will be denied at the motion to dismiss stage, Dr. York remains free to file a motion for summary judgment with additional evidence regarding plaintiff's efforts to exhaust his claims.

Next, the Court concludes that, although the allegations in support of a deliberate indifference claim against Dr. York are admittedly thin, they are sufficient to withstand a motion to dismiss. First, it is undeniable that plaintiff suffered a serious medical emergency in the form of a failing liver. Cf. Phillips v. CoreCivic, Inc., No. 3:18-cv-973, 2018 WL 6446588, at *4 (M.D. Tenn. Dec. 10, 2018) ("Plaintiff's medical need for the treatment prescribed for his liver damage is objectively serious[.]"). Next, the documents appended to the complaint demonstrate that Dr. York had at least some knowledge of some of plaintiff's symptoms, including possible

7

blood in plaintiff's urine and raised leukocyte levels. Although the exhibits show that Dr. York provided plaintiff with some treatment for his symptoms, this is not the end of the relevant inquiry, for even when a prison doctor has provided a prisoner "*some* treatment ... it does not follow that they have necessarily provided ... *constitutionally adequate* treatment." De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). For instance, treatment can be constitutionally inadequate when a doctor "doggedly persisted in a course of treatment known to be ineffective." Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005).

Here, the Court does not conclude that Dr. York definitively acted unconstitutionally; it merely concludes that the documents appended to the complaint allow for an inference that Dr. York did not adequately respond to plaintiff's protracted suffering. The Court makes this determination cognizant of its duty to hold pro se litigants to a less stringent standard in assessing their complaints. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations and citations omitted). The Court also observes that the medical records plaintiff supplied are likely not comprehensive and do not fully demonstrate or contextualize the scope of Dr. York's action or inaction. In short, in denying Dr. York's motion to dismiss, the Court does not express any view on the potential merits of plaintiff's claim; it merely concludes that the allegations and exhibits before it are sufficient to cross the threshold such that determination of the merits at summary judgment would be appropriate. In line with this conclusion, the Court will defer ruling on Dr. York's qualified immunity argument until the filing of a properly supported motion for summary judgment.

## IV. Conclusion and Order

For the reasons stated above, defendant Clarke's motion to dismiss [Dkt. No. 9] is GRANTED, Dr. York's motion to dismiss [Dkt. No. 6] is DENIED, and it is hereby

ORDERED that judgment enter in favor of defendant Harold Clarke;[1] and it is further

ORDERED that Dr. York file within thirty (30) days, if warranted and appropriate, a properly supported motion for summary judgment assessing the merits of plaintiff's claims against him; and it is further

ORDERED that, within twenty-one (21) days of defendant filing a responsive pleading, plaintiff file any opposition, which must include counter-affidavits (sworn statements subject to the penalty of perjury), or other responsive material contesting the affidavits or records filed by the defendant. If plaintiff does not file an opposition, the Court could dismiss this civil action solely on the basis of the defendant's responsive pleading. See E.D. Va. Local Civ. R. 7(K); Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Any reply brief from defendant must be filed within fourteen (14) days, and unless plaintiff explicitly requests additional time for filing additional materials, defendant's responsive pleading will be considered ready for decision twenty-one (21) days after it is filed; and it is further

ORDERED that plaintiff's failure to notify the Court immediately upon being transferred, released, or otherwise relocated may result in the dismissal of this complaint pursuant to Fed. R. Civ. P. 41(b).

The Clerk is directed to send a copy of this Order to plaintiff, pro se, and to counsel of record for defendants.

Entered this 31ST day of May 2022.

Alexandria, Virginia

_Claude M. Hilton_
United States District Judge

---

[1] "[P]ursuant to Rule 54(b) of the Federal Rules of Civil Procedure, an order granting [] judgment to fewer than all defendants is unappealable unless the district court makes an express determination that there is no just reason for delay and ... an express direction for the entry of judgment." Excel Industries, Inc. v. Eastern Express, Inc., No. 95-1948, 1997 WL 1100326 (4th Cir. Nov. 5, 1997) (citing Fed. R. Civ. P. 54(b)) (internal quotation omitted). Because this Order grants judgment to fewer than all of the defendants named in this action, this Order is not immediately appealable.