**JUL 2 7 2022**

**CLERK, U.S. DISTRICT COURT**
**ALEXANDRIA, VIRGINIA**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Joseph Hatcher, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22cv47 (CMH/IDD) |
| | ) | |
| William York, MD, | ) | |
| Defendant. | ) | |

### ORDER

This matter is before the Court upon a Motion for Summary Judgment ("Motion") [Dkt. No. 22] filed by defendant William York, MD ("Dr. York" or "defendant") in this civil rights action brought by Virginia state prisoner Joseph Hatcher ("plaintiff"). Broadly, plaintiff alleges in this action that defendant violated his constitutional rights by failing to offer him adequate medical assistance. [Dkt. No. 1]. Dr. York argues in his Motion that plaintiff (1) failed to exhaust administrative remedies with respect to his claim and (2) that the record at summary judgment demonstrates he is entitled to judgment as a matter of law. [Dkt. No. 23]. Although plaintiff was provided the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K), see [Dkt. No. 23], he has failed to either oppose defendant's Motion or request additional time with which to do so. Consequently, there is no reason for delay in considering the instant Motion. For the reasons that follow, that Motion will be granted, judgment will enter in Dr. York's favor, and this action will be dismissed.

### I. Background

*A.*      ***The Complaint***

As was explained in an Order dated May 31, 2022, see [Dkt. No. 19], plaintiff's Complaint is not a model of clarity. Plaintiff expressly alleges that he suffered "extreme

abdominal pain" while incarcerated at Nottoway Correctional Center ("NCC") and that he was refused treatment, see [Dkt. No. 1] at 4, but a full understanding of his claim requires parsing of over one hundred pages of documentary exhibits.  From the exhibits, the Court has gleaned that plaintiff takes issue with having been "misdiagnosed" and prescribed medications that worsened an existing liver condition.  See generally [Dkt. No. 1].  As a result of the misdiagnosis, plaintiff suffered "incredible pain" unnecessarily.  Id. at 5.  Plaintiff blames Dr. York, who is employed as a physician at NCC, for this alleged wrong.

**B.**     **_Statement of Undisputed Facts_**

With respect to this claim, the following facts are not in dispute.[1]  Plaintiff arrived at NCC on or around October 22, 2020.  [Dkt. No. 24-2] ("York Aff.") at ¶ 7.  Upon arrival, he underwent a battery of lab testing.  Id.  The panel tested for, among other things, plaintiff's liver function.  Id.  Each test returned normal results except for one, which showed plaintiff's blood glucose levels to be "mildly decreased" as compared to normal.  Id.

Although plaintiff submitted several requests in his first weeks and months at NCC, see, e.g. [Dkt. No. 24-2] at 2 (sick call form dated October 29, 2020, in which plaintiff claimed neck pain), it was not until January 9, 2021, that he indicated to medical staff that he was experiencing abdominal pain, see York Aff. at ¶ 8.  On that date, a licensed practical nurse saw plaintiff, who

---

[1] The statement of undisputed facts is derived from the exhibits accompanying both the complaint and Dr. York's Motion. To the extent material exists in the record that neither party has brought to the Court's attention and therefore does not contribute to this facts section, that is of no moment, for it is not the Court's responsibility to scour the record in search of evidence supportive of a party's position, even for pro se litigants.  See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Thompson v. Wiedemann, No. 3:16cv834-HEH, 2018 WL 1568681, at *3 (E.D. Va. Mar. 30, 2018) (stating in context of pro se prisoner-initiated suit that a plaintiff's "failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of Defendants in deciding [the motion]").

specifically complained of left upper quadrant pain and stated that he had not had a bowel movement in three days. Id. In response to these concerns, the nurse performed a urine dipstick test, which showed the presence of some blood in plaintiff's urine. Id. Plaintiff was additionally provided magnesium citrate for his constipation and a seven-day supply of ciprofloxacin, an antibiotic. Id. Dr. York signed off on this note on January 11, 2021. Id. Plaintiff was seen again the following day, once more complaining of abdominal pain. Id. at ¶ 9. Plaintiff underwent a blood and urine test and, at Dr. York's request, was provided an increased dosage of ciprofloxacin and Tylenol. Id.

Following plaintiff's submission of an emergency grievance, Dr. York personally saw plaintiff on January 12, 2021. Id. at ¶ 10. Plaintiff complained of continued left-side, anterior abdominal pain. Id. Taking plaintiff's medical history—which included previous diagnoses of kidney stones—into account, Dr. York concluded that plaintiff was likely suffering a urinary tract infection. Id. Consequently, defendant instructed plaintiff to continue to take the antibiotics and Tylenol previously prescribed but additionally instructed plaintiff to increase his fluid intake and provided plaintiff Zofran, a medication designed for nausea. Id.

Dr. York followed up with plaintiff on January 14, 2021. Id. at ¶ 11. Plaintiff did not complain of abdominal pain on this occasion, but Dr. York nevertheless provided him Miralax and magnesium citrate to assist with bowel movements. Id. Dr. York additionally ordered plaintiff an abdominal x-ray, which ultimately showed a "[n]onspecific bowel gas pattern" and "[n]o definite obstruction." Id. Dr. York concluded that the exam showed nothing of clinical significance. Id.

Plaintiff was again seen on January 15, 2021, again complaining of abdominal pain. Id. at ¶ 12. On this date, he stated that he was able to pass gas and had liquid bowel movements. Id.

3

He also stated that his pain level was "not severe."  Id.  The nurse administering the visit informed plaintiff of his x-ray results and provided plaintiff a referral to a "Dr. Mobashar" for routine care.  Id.

On January 17, 2021, plaintiff filed an emergency grievance stating that his skin was yellow and that his abdominal pain had increased.  Id. at ¶ 14.  Nurse Bailey called Dr. York to inform him of this development, and Dr. York responded by ordering plaintiff to be transferred to VCU Medical Center.  Id.  Plaintiff was admitted to VCU at approximately 2:15 a.m. on January 19, 2021.  See [Dkt. No. 1-1] at 13.  Plaintiff remained there for a week, until January 26, 2021.  See [Dkt. No. 1-1] at 13; York Aff. at ¶ 17.  During that time, doctors diagnosed plaintiff with, and treated plaintiff for, acute hepatitis B.  Id. at ¶ 20; [Dkt. No. 1-1] at 13.

Plaintiff returned to NCC with instructions from NCC doctors: ensure plaintiff was not provided substances that could damage his liver but *was* provided pantoprazole and miralax.  York Aff. at ¶ 17.  Additionally, plaintiff had been scheduled for a follow-up appointment on March 3, 2021.  Id.

On January 28, 2021, plaintiff filed an informal complaint claiming that he was still unwell.  Id. at ¶ 18.  Dr. York examined plaintiff on February 18, 2021 and found that, contrary to plaintiff's claims, plaintiff was still receiving the medications VCU doctors had recommended for him.  Id.  And because plaintiff was scheduled to be transferred to Bland Correctional Center before his scheduled follow-up appointment, Dr. York contacted VCU to ensure plaintiff's appointment could occur over the phone.  Id.  Plaintiff was able to attend his March 3, 2021 appointment via tele-visit.  Id.

4

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). A district court evaluating a motion for summary judgment should consider the evidence in the light most favorable to—and draw all reasonable inferences in favor of—the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

Although Dr. York presents two theories in his Motion, the Court need not address both because, for the reasons that follow, it concludes that the record warrants entry of judgment in defendant's favor with respect to the merits of the claim before the Court.

To prevail on a claim regarding prison medical care, a plaintiff must satisfy two elements.[2] First, he must show that he suffered from a sufficiently serious medical need. A need

---

[2] Plaintiff believes Dr. York to have violated his rights under the Fourteenth Amendment. See [Dkt. No. 1] at 4. But accepting as true plaintiff's allegation that he was a "convicted and sentenced state prisoner at the time of the events in question, see id. at 4, it is the Eighth Amendment that governs plaintiff's claim. Ultimately, though the distinction is academic because the same standard applies regardless of whether plaintiff's claim arises under the Eighth or Fourteenth Amendment. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) ("In any case, we need not resolve whether Brown was a pretrial detainee or a convicted prisoner because

is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Second, he must show that a defendant was deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[A]n official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)). A prisoner's mere disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action. See United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

Here, it is undisputed that at the time relevant to this suit plaintiff was suffering from an objectively serious medical condition—hepatitis B. Consequently, plaintiff's claim turns on the second element of the test described above—the deliberate indifference element. Although it is unfortunate that plaintiff suffered pain for as long as he did, the record makes clear that Dr. York was anything but indifferent to plaintiff's needs. Indeed, it was not until January 9, 2021 that plaintiff complained of abdominal pain. Within mere days, Dr. York: (1) sought to minimize plaintiff's pain by providing him Tylenol; (2) sought to treat plaintiff's symptoms by providing laxatives and antibiotics; and (3) sought to diagnose plaintiff by ordering urine and blood tests as well as an x-ray. That Dr. York did not come to a correct diagnosis is unfortunate but does not open him to constitutional liability given the obvious efforts he took to treat plaintiff. Cf. Bridges v. Keller, No. 12-7514, 2013 WL 1277329, at *1 (4th Cir. Mar. 29, 2013) ("[Plaintiff's]

---

the standard in either case is the same—that is, whether a government official has been "deliberately indifferent to any [of his] serious medical needs.") (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)).

allegations demonstrated that prison officials were promptly responsive to his complaints and regularly administered treatment. That they ultimately failed to correctly diagnose his injury does not render their responses deliberately indifferent.").

The Court observes that the misdiagnosis in this case was eminently reasonable, given that plaintiff's expressed symptoms—left-side abdominal pain and constipation—were inconsistent with a diagnosis of a liver ailment.[3] To Dr. York's additional credit, the record makes clear that, as soon as plaintiff expressed that he was suffering symptoms indicative of possible liver damage—i.e. yellowing skin and increased abdominal pain—Dr. York acted by having plaintiff sent to a hospital where he could receive more immediate and intensive care.

In short, no reasonable factfinder could assess the record and conclude that Dr. York was indifferent to plaintiff's medical needs.

### IV. Conclusion and Order

For the reasons stated above, Dr. York's Motion for Summary Judgment [Dkt. No. 22] is GRANTED, and it is hereby

ORDERED that judgment enter in Dr. York's favor; and it is further

ORDERED that defendant's Motion for Extension of Time to File Answer [Dkt. No. 21] be and is GRANTED, nunc pro tunc to its date of filing such that the Motion for Summary Judgment is deemed timely filed.

---

[3] The Court can take judicial notice that the liver is located on the right side of a human body. Cf. Stephen v. Montejo, No. 2:18-cv-1796, 2020 WL 1639992, at *3 (E.D. Cal. Apr. 20, 2020) (stating that "general medical facts that are not subject to reasonable dispute" are judicially noticeable and, applying this logic, taking judicial notice of "the anatomy and function of the prostate"); Vilfranc v. McDonald, 28 Vet. App. 357, 360 (2017) ("[T]he Court here takes judicial notice of the anatomy of the jaw.").

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the appellate court.  Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed, pursuant to Fed. R. Civ. P. 58, to (1) enter final judgment in favor of Dr. York, to (2) forward a copy of this Order to plaintiff, pro se, and to counsel of record, and to (3) close this civil action.

Entered this _27th_ day of _____July_____ 2022.

Claude M. Hilton
United States District Judge

Alexandria, Virginia

8